United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>RICHARD BARNETT, *et al.*,<br><br>        Defendants.<br>_____/ | No. C-10-0077 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S MOTION TO STAY**<br><br>**(Docket Nos. 23, 25)** |

        Plaintiff Allstate Insurance Company has filed suit against Defendants Richard Barnett and Mario Alexander.[1] Previously, Allstate had issued a homeowners insurance policy to Mr. Barnett. While the policy was in place, Mr. Alexander was allegedly injured as a result of actions taken by Mr. Barnett. Mr. Alexander filed an action against Mr. Barnett in state court asserting negligence as well as an intentional tort. Mr. Barnett tendered defense of this underlying action to Allstate. Allstate agreed to pay and has been paying for the defense of the underlying action subject to a reservation of rights. In the case pending before this Court, Allstate asks for a declaration that it has no duty to defend or indemnify Mr. Barnett.

        Currently pending before the Court are two motions: (1) Allstate's motion for judgment on the pleadings or, in the alternative, for summary judgment and (2) Mr. Barnett's motion to dismiss, or, in the alternative, stay Allstate's lawsuit. Having considered the parties' briefs and

---

[1] Allstate and Mr. Alexander have reached a stipulation that he will be bound by any judgment and rulings by the Court in this case. *See* Docket No. 44 (stipulation); Docket No. 45 (order).

accompanying submissions, as well as the oral argument of counsel, the Court **DENIES** Allstate's motion in its entirety and **GRANTS** Mr. Barnett's alternative motion for a stay.

### I.   FACTUAL & PROCEDURAL BACKGROUND

In their pleadings, the parties agree that, in April 2009, Allstate issued a homeowners policy to Mr. Barnett. *See* Compl. ¶ 6; Ans. ¶ 6. The parties also agree that, in September 2009, Mr. Alexander initiated a lawsuit against Mr. Barnett based on an event that took place while the homeowners policy was in place. *See* Compl. ¶ 7; Ans. ¶ 7.

In his counterclaims, Mr. Barnett describes the incident that occurred as follows. On April 12, 2009, two cars drove up to Mr. Barnett's residence. Two men were inside the first car, and three men were inside the second. The second car was driven by Mr. Alexander. The occupants of both cars, except for Mr. Alexander, exited the vehicles upon reaching the residence. They then invaded the home and stole approximately two pounds of marijuana, which Mr. Barnett was growing under a medical marijuana license. *See* Countercl. ¶ 27.

Mr. Barnett's two sons were in the house along with Mr. Barnett at the time of the home invasion. The sons ran after the robbers as they left the house. Mr. Barnett grabbed his gun and ran out after his sons to protect them. Mr. Barnett saw Mr. Alexander sitting in the car and pointing what appeared to be a gun in Mr. Barnett and the sons' direction. Mr. Barnett responded in self-defense by shooting twice in the direction of the car to scare the robbers away. The robbers then sped away. *See* Countercl. ¶ 27.

In a declaration submitted in opposition to Allstate's currently pending motion, Mr. Barnett essentially provides the same description as above. He emphasizes in the declaration that "[t]he sole reason I took the two shots was to scare the perpetrators away. I never intended to shoot anyone." Barnett Decl. ¶ 7. In opposing Allstate's motion, Mr. Barnett also asserts that the two shots he did fire never actually hit anyone, including Mr. Alexander. (In his underlying lawsuit, Mr. Alexander claims that he suffered bullet wounds to his hand and stomach as a result of Mr. Barnett's actions. *See* Docket No. 1 (complaint for underlying action)). More specifically, Mr. Barnett offers a statement of probable cause prepared by an investigator for Humboldt County, which states that (1) Mr. Barnett's gun expended only two shells and that (2) three gunshot holes were visible in the car

2

that Mr. Alexander had driven – two in the hood and one in the windshield. *See* Perlman Decl., Ex. 2 (statement of probable cause). According to Mr. Barnett, his two gunshots accounted for the holes in the hood, *see* Barnett Decl. ¶ 9, and therefore, he did not actually shoot Mr. Alexander.

## II. DISCUSSION

### A. Allstate's Motion to Strike

As a preliminary matter, the Court addresses Allstate's request that the Court strike two briefs filed by Mr. Barnett: (1) his reply brief filed in support of his motion to dismiss or stay, *see* Docket No. 39, and (2) his brief filed in response to Allstate's response to his evidentiary objections (filed in conjunction with his opposition to Allstate's motion for judgment on the pleadings or summary judgment). *See* Docket No. 41. Allstate asks that both briefs be stricken because they are untimely and unauthorized.

With respect to the reply brief, Allstate correctly points out that it is untimely. Under the Court's order, the brief was due on July 21, 2010, *see* Docket No. 19 (order), but Mr. Barnett did not file the reply until three court days later, on July 26, 2010. The late filing, however, does not appear to have caused Allstate any prejudice, particularly because Allstate was not required to file any response to the reply brief and because the reply brief was filed more than two weeks before the hearing date. In light of the gravity of the impending motions and the lack of any prejudice, the merits are paramount and hence the request to strike is denied.

As for the brief filed in response to Allstate's response to Mr. Barnett's evidentiary objections, again, Allstate is correct that such a brief was not authorized by the Court. But in the absence of any showing of prejudice, again, the request to strike is denied.

### B. Allstate's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment

The Court addresses next Allstate's motion for judgment on the pleadings or, in the alternative, for summary judgment. The Court does so, in spite of Mr. Barnett's motion to dismiss or stay, for two reasons. First, although Mr. Barnett has styled his motion as one to dismiss, he does not cite to any authority establishing that, under the circumstances presented herein, the Court should dismiss the action. Rather, his authority indicates that, at best, the Court should stay the

action.  Second, although Mr. Barnett has alternatively moved for a stay of the case, Allstate is arguing that it is entitled to judgment even accepting Mr. Barnett's characterizations as true – *i.e.*, that (1) he did not shoot Mr. Alexander at all or that (2) his gunshot(s) did hit Mr. Alexander but he did not intend to shoot Mr. Alexander.  Under these circumstances, the Court addresses Allstate's motion first, in spite of the motion to stay.  *See Montrose Chem. Corp. of Cal. v. Superior Court*, 25 Cal. App. 4th 902, 908 n.4 (1994) (noting that one exception to the general rule barring declaratory relief on the insurer's duty to defend is when "'the insurer can establish lack of coverage by means of facts that the insured does not dispute'").

In its motion, Allstate argues in essence, that, even accepting Mr. Barnett's characterizations as true, it has no duty to defend the underlying action brought by Mr. Alexander.  "Because the duty to defend is broader than the duty to indemnify, a conclusion here [that Allstate does] not have a duty to defend will be dispositive of [any] claim that [Allstate has] a duty to indemnify."  *Delgado v. Interins. Exchange of the Auto. Club of S. Cal.*, 47 Cal. 4th 302, 308 n.1 (2009) (emphasis in original).  Allstate's motion is made as one for judgment on the pleadings or in the alternative for summary judgment.

1.  <u>Legal Standards</u>

  a.  <u>Rule 12(c)</u>

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed so long as the motion is filed "early enough not to delay trial."  Fed. R. Civ. P. 12(c).  In the instant case, no trial has been scheduled as of yet, and so there is no issue of untimeliness.

The basic question for a court under Rule 12(c) is the same as that under Rule 12(b)(6) – *i.e.*, whether the underlying complaint[2] contains sufficient factual allegations which, taken as true, state a facially plausible claim for relief.  *See, e.g.*, *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (stating that, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks

---

[2] The instant case is a declaratory relief action, and therefore the "true" plaintiff in this action is Mr. Barnett instead of Allstate.

omitted); *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (noting that "[a] motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss; adding that "to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true") (internal quotation marks omitted).

    b.  Rule 56

  Under Federal Rule of Civil Procedure 56, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

  At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255. Where the nonmoving party has the ultimate burden of proof, the party moving for summary judgment may prevail on such a motion simply by pointing to the nonmoving party's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

    2.  Evidentiary Objection

  In his papers, Mr. Barnett contends that Allstate has improperly offered evidence protected by the attorney-client privilege in making its motion for judgment on the pleadings or, in the alternative, for summary judgment. The specific evidence at issue is Exhibit A of the Dillard declaration. Exhibit A is a transcript of a recorded statement that Allstate made of a telephone conversation between an Allstate claims adjuster and Mr. Barnett. Mr. Barnett's attorney (the same attorney as the attorney of record in the instant case) was also present on the telephone at the time. The conversation took place in November 2009, which was after Mr. Barnett had tendered the

defense of the underlying action to Allstate but prior to Allstate's decision to pay for the defense subject to a reservation of rights. *See* Countercl. ¶ 27 (alleging that tender of the defense was made in October 2009 and that Allstate agreed to pay for the defense subject to a reservation of rights in December 2009).

Mr. Barnett's objection to this evidence is moot with respect to Allstate's motion for judgment on the pleadings. A motion for judgment on the pleadings looks only at the pleadings (*i.e.*, the complaint and the answer/counterclaims) and not anything beyond the four corners of those documents.

As for the motion for summary judgment, Mr. Barnett argues that the recorded conversation is a protected attorney-client communication. In support of this argument, he cites *Travelers Insurance Cos. v. Superior Court*, 143 Cal. App. 3d 436 (1983). There, a state court stated as follows:

> [According] to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, *if* the policy requires the company to defend him through its attorney, *and* the communication is intended for the information or assistance of the attorney in so defending him.

*Id.* at 451 (internal quotation marks omitted; emphasis added).

The problem for Mr. Barnett is that it is not clear whether the homeowners policy at issue required Allstate to defend him in the first place – indeed, that is the issue that the Court is now confronting. An additional problem for Mr. Barnett is that he has not offered any evidence to show that the conversation he had with the Allstate claims adjuster was "intended for the information or assistance of the attorney in so defending him." *Id.* In fact, another purpose was arguably served by the conversation – *i.e.*, to figure out whether Allstate was required to defend Mr. Barnett in the first place. Notably, the *Travelers* court stated that, "[i]f it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates.'" *Id.* at 452. In the instant case, Mr. Barnett, as the party asserting the attorney-client privilege, has the burden of proving which purpose predominates. *See Wellpoint Health Networks v.*

1 *Superior Court*, 59 Cal. App. 4th 110, 123 (1997) (noting that "the burden of showing preliminary facts necessary to support the privilege lies with the party claiming it"). Mr. Barnett has not carried that burden.

Even assuming that Mr. Barnett did meet his burden of proof, that would not bar admission of the evidence because Allstate has satisfied its burden of showing that the privilege was waived. *See id.* (noting that, once the party claiming the privilege has met its burden, then the burden passes to the opposing party to show that the claimed privilege does not apply or that an exception exists or that there has been an expressed or implied waiver). As Allstate points out, Mr. Barnett has asserted a claim for breach of the implied covenant of good faith and fair dealing, and one of the allegations made in support of that claim is that Allstate failed to properly investigate the claims against him and to make reasonable coverage decisions. *See* Countercl. ¶ 34. Having put Allstate's investigation and coverage decisions at issue, Mr. Barnett has therefore waived any privilege with respect to the recorded conversation which was part of the investigation and coverage decisions. *See Southern Cal. Gas Co. v. Public Utils. Comm'n*, 50 Cal. 3d 31, 40 (1990) (noting that a "person or entity seeking to discover privileged information can show [an implied] waiver by demonstrating that the client has put the otherwise privileged communication directly at issue and that disclosure is essential for a fair adjudication of the action").

Finally, even assuming that the attorney-client privilege were applicable and not waived, it would make no material difference for purposes of the motion for summary judgment because Mr. Barnett has already provided an account of the incident between him and Mr. Alexander – not only in his pleadings but also in his declaration offered in opposition to Allstate's motion. That declaration essentially provides the same information as the recorded conversation. *See, e.g.*, Dillard Decl., Ex. A (Tr. at 13) (Mr. Barnett stating that, when he fired his gun, "I didn't really aim[;] I just kind of pulled up and just kind of shot, you know, at the front of the car").[3] All these

---

[3] In the recorded conversation, Mr. Barnett did make some statements that are not consistent with his current position. For example, in the recorded conversation, Mr. Barnett stated several times that he shot through the front windshield. *See* Dillard Decl., Ex. A at 5, 7, 13. This is not consistent with his current position that the shots he fired went through the hood only, and not the windshield. It should be noted, however, that, in the recorded conversation, Mr. Barnett later backtracked from his statement that he shot through the windshield. *See* Dillard Decl., Ex. A at 13 ("I didn't really aim. I just kind of

United States District Court
For the Northern District of California

documents state that Mr. Barnett did not intend to shoot anyone nor did he aim at any person. Thus, even if the recorded conversation were excluded, the Court would still have before it the declaration of Mr. Barnett.

3. Duty to Defend

At issue in the pending motion is whether Allstate, as the insurer, has a duty to defend Mr. Barnett, its insured, in the underlying action brought by Mr. Alexander. To prevail in this declaratory relief action, Mr. Barnett, as the insured, "'must prove the existence of a *potential* for coverage, while [Allstate] must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.'" *Delgado*, 47 Cal. 4th at 308 (emphasis in original). For purposes of this order, the Court assumes that Mr. Barnett's facts are true – *i.e.*, either he did not shoot Mr. Alexander at all or his gunshot(s) did hit Mr. Alexander but he did not intend to shoot Mr. Alexander.

a. Policy Terms

In its papers, Allstate quotes two key provisions in the insurance policy at issue: (1) the general coverage provision and (2) the exclusionary clause for intentional acts. Mr. Barnett does not, in his papers, argue that those provisions are not in the contract; nor does he make any assertion that the provisions have not been accurately quoted. Therefore, the Court may proceed with the assumption that the provisions are in the insurance policy at issue and have been accurately quoted by Allstate.

i. General Coverage Provision

The general coverage provision states as follows:

> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.[4]

---

pulled up and just kind of shot, you know, at the front of the car."); Dillard Decl., Ex. A at 19 ("I know the one [shot] – one of them went through [the windshield]. I seen glass, you know, pop and that's – I – I don't know if it went – both through the window or one might have went through the hood. I don't – I don't – really don't know.").

[4] All bolded terms here and in the provisions below appeared as such in the policy.

8

Occurrence is defined as "an accident . . . resulting in **bodily injury** or **property damage**."

ii. Exclusionary Clause for Intentional Acts

The exclusionary clause of intentional acts states as follows:

> **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
>
> . . . .
>
> b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
>
> c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

b. No Shooting Mr. Alexander

As noted above, Mr. Barnett's first contention is that he never shot Mr. Alexander in the first place – *i.e.*, his two gunshots went through the hood and never the windshield. But that is not the issue in determining coverage. In making that determination, the Court must assume the facts in the underlying complaint are true; if coverage is afforded under any of the claims pled therein, the insurer must provide a defense. *See Davis v. Farmers Ins. Group*, 134 Cal. App. 4th 100, 104 (2005) (stating that "[a]n insurer's duty to defend turns on the facts alleged in the underlying complaint or available to the insurer from extrinsic sources at the time the claim is made"). Thus, the primary question here is whether there is a potential for coverage if Mr. Barnett did not intend to shoot Mr. Alexander.

c. Shooting Mr. Alexander

As noted above, Mr. Barnett's second contention is that, even if his gunshot(s) did hit Mr. Alexander, he did not intend to shoot Mr. Alexander. Here, the critical question is whether Allstate has a duty to defend under the general coverage provision. Allstate makes a secondary argument that it has no duty to defend given the exclusionary clause for intentional acts but that argument is not very persuasive. An exclusionary clause does not apply where the insured acted out of self-defense, even if that defense is mistaken. *See, e.g.*, *Walters v. American Ins. Co.*, 185 Cal. App. 2d

776, 782-83 (1960) (stating that exclusionary clause for intentional acts is designed to prevent indemnifying one against loss from his own wrongful acts; here, because insured acted out of self-defense, he did not act with a wrongful intent and therefore exclusionary clause was not applicable); *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3d 163, 170 (1977) (stating that "[i]t is now settled that injuries resulting from acts committed by an insured in self-defense are not 'intended' or 'expected' within the meaning of those terms as customarily used in an exclusionary clause like the one involved in the present case"). Furthermore, regardless of the applicability of the exclusionary clause, there must be coverage in the first place.

Focusing on the coverage issue, the question is whether, in the instant case, "an accident . . . resulting in **bodily injury** or **property damage**" took place. "In the context of liability insurance, an accident is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Delgado*, 47 Cal. 4th at 308 (internal quotation marks omitted). "[A]n injury-producing event is not an 'accident' . . . when all of the acts, the manner in which they were done, *and the objective accomplished* occurred as intended by the actor." *Id.* at 311 (emphasis added). Under this standard – which the California Supreme Court endorsed in *Delgado* just one year ago – there was an accident. If Mr. Barnett did not intend to shoot Mr. Alexander, then it cannot be said that Mr. Barnett accomplished his objective.

Allstate argues that *Delgado* actually favors its position and not Mr. Barnett's, but the Court does not agree. The California Supreme Court did note in *Delgado* that "a purposeful and intentional act remains purposeful and intentional regardless of the reason or motivation for the act" and therefore concluded that an insured's unreasonable, subjective belief in the need for self defense does not "convert[] into 'an accident' an act that is purposeful and intended to inflict injury." *Id.* at 311, 314. But simply because the reason or motivation for an act is not relevant does not dispose of the question of what act was intended. The issue as to coverage is not Mr. Mr. Barnett's belief that he acted in self-defense, but whether he intended to shoot someone. "Clearly, where the insured acted deliberately with the intent to cause injury, the conduct would not be deemed an accident." *Merced Mutual Ins. Co. v. Mendez*, 213 Cal. App. 3d 41, 50 (1989). Here, Mr. Barnett's position, which the Court assumes at this juncture is true, is that he did not intend to cause Mr. Alexander

injury.  *See also State Farm Fire & Cas. Co. v. Superior Court*, 164 Cal. App. 4th 317, 325, 328 (2008) (noting that "the term 'accident' has also been used to refer to the unintended or unexpected consequences of the act"; concluding that there was an accident when the insured deliberately threw the victim into a swimming pool but threw too softly so that the victim missed the water); *Fire Ins. Exchange v. Superior Court*, 181 Cal. App. 4th 388, 392 (2010) (stating that "[a]n accident does not occur when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage"; giving as an example of an accident "[w]hen a driver intentionally speeds and as a result, negligently hits another car" -- "the speeding is an intentional act" but "the act directly responsible for the injury -- hitting the other car -- was not intended by the driver and was fortuitous").

Allstate argues in its brief that Mr. Barnett did in fact intend to shoot the occupants of Mr. Alexander's car because he shot at the windshield.  However, Mr. Barnett provided testimony in his declaration and in his recorded interview with Allstate that he did not intend to shoot anyone – that at most he shot in the direction of the car.  He denies aiming the gun.  He did not testify that he aimed at the windshield of a car full of occupants – an act which could be deemed in reckless disregard, possibly tantamount to intent.

Because Mr. Barnett has proved the existence of a potential for coverage (*i.e.*, if he did not intend to shoot Mr. Alexander and did not aim the gun at Mr. Alexander), the Court must deny Allstate's motion for judgment, whether as one for judgment on the pleadings or for summary judgment.[5]

C.    Mr. Barnett's Motion to Stay

Having resolved Allstate's motion, the Court now turns to the motion to stay made by Mr. Barnett. California case law indicates that "the classic situation" for a stay is "when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct." *Montrose*, 25 Cal. App. 4th at 907.  This is a classic situation for a stay because "the potential that the insurer's

---

[5] For purposes of the summary judgment motion, there is at least a genuine dispute of fact as to whether Mr. Barnett intended to shoot Mr. Alexander.

11

proof will prejudice its insured in the underlying litigation is obvious." *Id.* This situation obtains when a factual issue in the underlying litigation overlaps with a factual issue determinative of coverage. *See id.* (stating that, "'[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action'").

The instant case is essentially the classic situation – *i.e.*, Mr. Alexander is seeking damages on account of Mr. Barnett's negligence as well as an intentional tort. The intentional tort claim will turn on whether Mr. Barnett intended to shoot Mr. Alexander and whether he purposefully aimed the gun at him, the same question that is determinative of Allstate's disputed coverage. Given the overlap in factual issues and the potential conflict of interest, the Court hereby stays the instant case pending a resolution of the underlying lawsuit between Mr. Alexander and Mr. Barnett.

### III. CONCLUSION

For the foregoing reasons, Allstate's motion for judgment is denied and Mr. Barnett's alternative motion for a stay is granted.

This order disposes of Docket Nos. 23 and 25.

IT IS SO ORDERED.

Dated: September 9, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | No. C-10-0077 EMC |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| RICHARD BARNETT, *et al*., | |
| Defendants. | |

I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

MARIO ALEXANDER
829 "C" Street, Apt. 5
Eureka, CA 95501

MARIO ALEXANDER
P.O. Box 3232
Eureka, CA 95502

Dated: September 9, 2010      RICHARD W. WIEKING, CLERK

By:  _____/s/ Leni Doyle_____
       Leni Doyle
       Deputy Clerk