UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | No. C-10-0077 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS** |
| RICHARD BARNETT, *et al.*, | |
| Defendants. | **(Docket No. 74)** |
| _____/ | |

Plaintiff Allstate Insurance Company initiated this lawsuit against Defendants Richard Barnett and Mario Alexander. Previously, Allstate had issued a homeowners insurance policy to Mr. Barnett. While the policy was in place, Mr. Alexander (who has now been dismissed from the case, see Docket No. 59 (order)) was allegedly injured as a result of being shot by Mr. Barnett. Mr. Alexander thus filed an action against Mr. Barnett in state court. Mr. Barnett tendered defense of this underlying action to Allstate, which eventually accepted subject to a reservation of rights. In its claims, Allstate has asked for a declaration that it has no duty to defend or indemnify Mr. Barnett. In turn, Mr. Barnett has filed counterclaims against Allstate, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. Currently pending before the Court is Allstate's motion to dismiss the counterclaims. Having considered the parties' briefs and the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Allstate's motion.

## I. DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

In the instant case, Mr. Barnett has asserted the following causes of action against Allstate:

(1) Breach of contract.
(2) Breach of the implied covenant of good faith and fair dealing.
(3) Intentional infliction of emotional distress.
(4) Negligent misrepresentation.
(5) Violation of 42 U.S.C. § 1983 (Second Amendment).
(6) Declaratory relief (Second Amendment).
(7) Violation of Fair Claims Practice Settlement Act.
(8) Violation of California Business & Professions Code § 17200.

Allstate moves for a dismissal of each of the claims.

A. Failure to Oppose

As a preliminary matter, the Court takes note that Mr. Barnett has failed to substantively oppose Allstate's motion to dismiss three of the causes of action, namely, the claims for violation of

42 U.S.C. § 1983 (Second Amendment); declaratory relief (Second Amendment); and violation of the Fair Claims Practice Settlement Act.

Mr. Barnett tries to excuse his failure, asserting that, "[d]ue to the time constraints created by the fact that this court issued a stay and created a very short time frame thereunder to conduct discovery, [he] has not had time to respond" with respect to these causes of action. Opp'n at 13. Mr. Barnett also asks for an enlargement of time to respond with respect to these causes of action.

Mr. Barnett's request for an enlargement of time is denied. Allstate filed the motion to dismiss on April 21, 2011, setting the motion for hearing on June 8, 2011. Given the June 8 hearing date, Mr. Barnett did not have to file his opposition – and in fact did not file his opposition – until May 18, 2011. Thus, he had almost one month to prepare an opposition to the motion to dismiss, which is much more than the typical two-week period to respond to a motion provided for by the Civil Local Rules.

As to the merits of the claims, the Court agrees with Allstate that dismissal is warranted for failure to state a claim for relief. With respect to the § 1983 and declaratory relief counterclaims, both are based on an asserted violation of the Second Amendment. See U.S. Const., amend. II (providing that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed"). But there does not appear to be any authority supporting Mr. Barnett's position that a claimed violation of the Second Amendment may be brought against a private actor such as Allstate. For example, § 1983 imposes civil liability on an individual only where he or she acted under color of state law. *See Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (noting that "plaintiffs do not enjoy Fourteenth Amendment protections against 'private conduct abridging individual rights'"). "A private individual's action may be 'under color of state law' where there is 'significant' state involvement in the action" or the individual's action is otherwise "'fairly attributable'" to the state. *Id.* In the instant case, there are no allegations in Mr. Barnett's counterclaims that suggest there was any state involvement behind the conduct of Allstate complained of herein.

As for the claim for violation of the Fair Claims Practice Settlement Act, Mr. Barnett's position is, in essence, that Allstate violated his rights because, under state law regulations, Allstate

3

1  should have agreed to defend him within 40 days after tender, not 72 days. *See* 10 Cal. Code Regs.
2  § 2695.7(b) (providing that, "[u]pon receiving proof of claim, every insurer . . . shall immediately,
3  but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in
4  part"). But, as Allstate points out, California courts have held that "neither the Insurance Code nor
5  regulations adopted under its authority provide a private right of action." *Rattan v. United Servs.*
6  *Auto. Ass'n*, 84 Cal. App. 4th 715, 724 (2001); *see also City of Hollister v. Monterey Ins. Co.*, 165
7  Cal. App. 4th 455, 488 (2008) (noting that "violations of the fair claims practices regulations do not
8  give rise to a private right of action"); *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F.
9  Supp. 2d 1079, 1091 (E.D. Cal. 2010) (taking note of plaintiffs' claims for relief for alleged
10 violation of § 2695.7 and California Insurance Code § 780 and then stating that "California law does
11 not provide a private right of action for violations of California Insurance Code section 780 or the
12 attendant regulations").

13 Accordingly, the Court dismisses with prejudice the § 1983, declaratory relief (which is
14 based on the constitutional claim), and Fair Claims Practice causes of action.

15 B.   Breach of Contract

16 The Court now turns to the first of the two main claims asserted by Mr. Barnett, *i.e.*, the
17 claim for breach of contract. While Mr. Barnett did not, in his pleading, specify exactly what acts
18 constituted the alleged breach, *see* Countercl. ¶ 30 (alleging breach on the part of Allstate "by doing
19 each and every of the things alleged in paragraphs 1-27 of this Answer to Complaint and
20 Counterclaim"), his opposition to the motion to dismiss clarified matters. Based on the opposition,
21 it appears that Mr. Barnett is asserting breach because (1) Allstate delayed in agreeing to defend
22 him; (2) Allstate failed to defend him by not paying all of his independent counsel's fees
23 (approximately $20,000); and (3) he had to pay out-of-pocket some of his defense costs. *See* Opp'n
24 at 6-7.

25 The first and third claims are related – *i.e.*, Mr. Barnett's contention is that, because Allstate
26 delayed in agreeing to defend him, he had to personally pay out-of-pocket some defense costs before
27 Allstate agreed to defend. At the hearing, Allstate argued that this theory was not articulated in Mr.
28 Barnett's counterclaims, but the Court does not agree. In his counterclaims, Mr. Barnett expressly

alleges as follows: "On 10-22-09, having not heard anything from Allstate [after his tender] Barnett filed an answer to Alexander's complaint in Humboldt County Superior Court causing Barnett to incur legal fees and filing expenses due to Allstate's failure to respond to Barnett's tender." Countercl. at 9.

To the extent Allstate maintains there is no "authority holding that a mere delay in accepting the insured's defense is a breach of contract," Reply at 3, the Court does not agree. At the hearing, Mr. Barnett pointed to *The Housing Group v. PMA Capital Insurance Co.*, 193 Cal. App. 4th 1150 (2011), where the court stated that

> [a]n insurer's "duty to defend arises when tender is made. It obligates the insurer, unless no part of any claim is potentially covered, to fund a defense to minimize the insured's liability." "To defend meaningfully, the insurer must defend immediately." "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf." "If the courts did not impose an *immediate* defense obligation upon a showing of a 'potential for coverage,' thereby relieving the insured from the burden of financing his own defense and then having to sue the insurer for reimbursement, the premiums paid by the insured would purchase nothing more than a lawsuit.

*Id.* at 1155-56 (emphasis in original); *see also Intergulf Dev. LLC v. Superior Court*, 183 Cal. App. 4th 16 (2010) (involving delay by insurer in agreeing to accept defense with reservation of right and not responding to request to appoint independent counsel).

In any event, in the instant case, there was more than just "mere delay," at least as pled by Mr. Barnett. Mr. Barnett contends that, in his initial letter tendering the defense to Allstate, he told Allstate that a responsive pleading was due by a certain date but Allstate failed to respond prior to that day, thus causing him to incur defense costs (costs that Allstate did not pay). Mr. Barnett then sent a second tender letter, but Allstate still failed to respond more than a month later. *See* Countercl. at 8-9. When Allstate finally did respond, it was well past the time frame required by regulations.[1]

Moreover, the Court also holds that Mr. Barnett has adequately stated a claim for relief based

---

[1] Even though Allstate's non-compliance with the regulations is not per se actionable since no private right of action is provided under the Insurance Code and regulations as noted above, that does not mean its failure to comply is not relevant to Mr. Barnett's claim of breach of contract.

5

on his allegation that Allstate failed to pay all of his independent counsel's fees (approximately $20,000). Allstate implicitly recognizes such by arguing that "that claim has already been referred to arbitration by this Court for resolution." Mot. at 4. But the fact that the arbitrator will determine the amount of fees that should be paid to independent counsel does not answer the question of whether Allstate did in fact have a duty to defend (*i.e.*, the coverage issue). If Allstate did have a duty, then, if Allstate failed to pay all *Cumis* counsel fees, it would be in breach of its contractual obligation.

The Court thus denies Allstate's motion to dismiss the claim for breach of contract.

C. <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

The other main claim asserted by Mr. Barnett is breach of the implied covenant of good faith and fair dealing. Although this claim is not the model of clarity, Mr. Barnett contends the allegations establish bad faith because (1) Allstate delayed in accepting his defense; (2) Allstate has refused to pay for *Cumis* fees incurred in the underlying action; (3) Allstate initiated this coverage action for declaratory relief causing Mr. Barnett to incur double fees; and (4) Allstate was refusing to participate in settlement negotiations for the underlying action in the attempt to get a ruling in this case first that there is no coverage.

In his opposition to Allstate's motion to dismiss, Mr. Barnett does not appear to pursue the fourth theory, presumably because Allstate did eventually settle the underlying action and for less than the policy limits. Mr. Barnett, however, is still asserting the other three theories.

On the third theory of bad faith, the Court finds that it is not fairly raised by the allegations in the counterclaims. In any event, even if it were, the mere filing of a coverage action does not give rise to a bad faith claim. In *Dalrymple v. United States Automobile Association*, 40 Cal. App. 4th 497 (1995), the court stated that,

> [a]bsent other facts, the mere filing of an action to declare the insurer's rights and duties relative to an insurance policy cannot form the basis of breach of the duty of good faith and fair dealing. Assuming the insurer has not otherwise abandoned, compromised or rejected the insurer's claim, an action seeking declaratory relief does not in any way frustrate the insured's enjoyment of his contract rights.

*Id.* at 519 (internal quotation marks omitted). Mr. Barnett argues that there are "other facts" here

6

because it was clear that there was coverage for the Alexander lawsuit, and thus there was no basis for the declaratory relief action. The Court rejects Mr. Barnett's position that coverage was in fact clear. In denying Allstate's motion for summary judgment, the Court noted that there was a genuine dispute of material fact as to whether Mr. Barnett intended to shoot Mr. Alexander. Indeed, it was a close call whether there was sufficient evidence to create a disparity issue of fact which prevented judgment as a matter of law for Allstate. While not entitled to summary judgment, Allstate had a substantial basis for bringing the declaratory relief action and filing the motion for summary judgment.

The Court further notes that California Civil Code § 47(b) generally immunizes an insurer from liability for seeking declaratory relief from its insured. *See Old Republic Ins. Co. v. FSR Brokerage*, 80 Cal. App. 4th 666, 685 (2000) (noting that, "in some circumstances the implied covenant continues to protect the insured's interests in the policy after litigation has begun between the insured and the insurer, despite the absolute litigation privilege found in Civil Code section 47" – *i.e.*, where there is malicious prosecution). *See* Docket No. 51 (Order at 11 n.5). Mr. Barnett fails to respond to Allstate's assertion of § 47(b).

The only questions remaining for the Court, therefore, are whether Mr. Barnett's allegations that Allstate delayed in accepting his defense and that Allstate failed to pay all of his *Cumis* counsel fees are enough to support his claim for bad faith. In making this assessment, the Court must bear in mind that, to prevail on a claim for bad faith, a plaintiff must establish only the following: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Id.* at 512 (internal quotation marks omitted). In the case at bar, Mr. Barnett has alleged that, when Allstate delayed in defending him, he had to pay defense costs out-of-pocket – costs which Allstate still has not paid and for no defensible reason. Mr. Barnett has also alleged that Allstate has not paid all of his *Cumis* counsel fees, again, for no defensible reason.

It is fair to imply from the counterclaims that Allstate allegedly failed to undertake its obligation to defend promptly because it was more interested in avoiding coverage and thus put its own interests above that of Mr. Barnett. *See Bosetti v. United States Life Ins. Co. in City of N.Y.*,

175 Cal. App. 4th 1208, 1235 (2009) (stating that, "to 'fulfill its implied obligation [of good faith and fair dealing], an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests'"). This is arguably evidenced by, *inter alia*, the alleged delay in accepting the defense (with or without reservation) to the Alexander suit and the failure to pay all the costs of defense (which Mr. Barnett alleges he had to incur personally in defending the Alexander suit), as well as the alleged delay in settling the Alexander suit in order to first exhaust its attempt to obtain a declaration of no coverage. *See* Countercl. at 12-13. While Allstate disputes any assertion of bad faith, Mr. Barnett has adequately stated a claim for relief for purposes of the instant motion to dismiss.

At the hearing, Allstate took the position that, at the very least, its decision to dispute the amount of *Cumis* counsel fees was objectively reasonable. In support of this position, Allstate cited an unpublished California state court opinion. *See Behnke v. State Farm General Ins. Co.*, No. D056898, 2011 WL 2162894, at *18 (Cal. Ct. App. May 31, 2011). Even assuming this Court could consider *Behnke* as potentially persuasive authority, *but see* Cal. Rule of Court 8.1115 (generally barring citation of unpublished opinions, with limited exceptions not applicable here), the case does nothing to advance Allstate's position at this juncture of the proceedings. In *Behnke*, the court determined that the insurer's decision to dispute the amount of *Cumis* counsel fees was objectively reasonable in large part because the arbitrator ultimately ordered the insurer to pay less than what was billed. *See id.* at *18. Here, the results of the arbitration are not yet known, the arbitration not having been completed. Moreover, Mr. Barnett alleges there was no good reason not to pay all the *Cumis* fees.

The Court thus denies Allstate's motion to dismiss the bad faith claim.

D.   Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish the following: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Catsouras v. Department of California Highway*

1  *Patrol*, 181 Cal. App. 4th 856, 874 (2010) (internal quotation marks omitted). Courts have
2  emphasized that extreme and outrageous conduct is conduct that "go[es] beyond all possible
3  [bounds] of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized
4  community." *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1608 (2009) (internal quotation
5  marks omitted).

> Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest, (2) knows the plaintiff is susceptible to injury through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.[2]

*Hernandez v. General Adjustment Bureau*, 199 Cal. App. 3d 999, 1007 (1988) (internal quotation marks omitted). "In the usual case, outrageousness is a question of fact," *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1045 (2009). However, there is no liability where an insurer "simply delayed or denied insurance benefits." *Mintz*, 172 Cal. App. 4th at 1608 (internal quotation marks omitted).

In the instant case, Allstate argues that the claim for intentional infliction should be dismissed because Mr. Barnett has failed to include allegations establishing extreme and outrageous conduct on the part of Allstate. In his counterclaims, Mr. Barnett alleges that Allstate's conduct was extreme and outrageous for the following reasons: (1) because Allstate knew that there was coverage but only agreed to defend under a reservation of rights; (2) because Allstate knew he was especially vulnerable, both emotionally and financially; and (3) because Allstate and he had a special relationship, *i.e.*, insurer-insured. *See* Countercl. ¶¶ 41-42.

The first argument is without merit. As Allstate points out, it is difficult to say that it goes beyond all bounds of decency for an insurer to question coverage in a situation such as this where the insured volitionally fired a gun in the general direction of the victim. *See also* Docket No. 51 (Order at 11 n.5) (denying Allstate's motion for summary judgment because there was a genuine dispute as to whether Mr. Barnett intended to shoot Mr. Alexander).

---

[2] This standard comes from the Restatement (Second) of Torts. *See Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979) (citing, *inter alia*, § 46 of the Restatement (Second) of Torts), *overruled on other grounds by White v. Ultramar*, 21 Cal. 4th 563 (1999).

As for the second argument, it is a closer call. Mr. Barnett claims that he was peculiarly susceptible to emotional distress because he was facing the prospect of an embarrassing trial, but that is not the kind of vulnerability contemplated by either the Restatement or California case law. Both the Restatement and California case law reflect that a person is peculiarly susceptible to emotional distress where, *e.g.*, he or she suffers from a physical or mental condition or peculiarity. *See* Rest. (2d) of Torts § 46, cmt. f; *McDaniel v. Gile*, 230 Cal. App. 3d 363, 372 (1991). For example, in *Hernandez*, 199 Cal. App. 3d at 999, the plaintiff was a sales clerk who

> submitted a claim for workers' compensation benefits, based upon the psychological harm caused by crimes committed at the convenience store in which she had worked. [She] gave the insurance adjuster "medical records and reports detailing her serious medical and psychiatric problems which included major depression, nightmares, anxiety and repeated suicide attempts." The claimant alleged the adjuster knew of [this] fragile emotional condition, and that she provided the sole economic support for her three children. Despite this knowledge, and the lack of any dispute as to the claimant's entitlement to benefits, the adjuster consistently delayed disability payments. Based on these allegations, the trial court concluded the claimant stated a cause of action for intentional infliction of emotional distress.

*Hailey v. California Physicians' Serv.*, 158 Cal. App. 4th 452, 475 (2007). Mr. Barnett's emotional condition based on the prospect of an embarrassing trial is hardly comparable to the fragile emotional condition of the plaintiff in *Hernandez*.

Mr. Barnett also claims susceptibility to emotional distress based on his economic vulnerability. As alleged in his counterclaims, the potential judgment for severely injuring Mr. Alexander "would financially ruin him." Countercl. ¶ 41. This vulnerability argument is stronger than the one above. In *Hernandez*, there was an economic vulnerability component, and there have been similar components in other cases as well. *See, e.g.*, *Wallis v. Superior Court*, 160 Cal. App. 3d 1109 (1984) (indicating that the plaintiff was in an extremely vulnerable position because of his age, lack of work skills, and financial responsibilities). Mr. Barnett claims Allstate knew a potential judgment would financially ruin him. To be sure, Mr. Barnett has not presented any case authority holding economic vulnerability by itself would be enough to establish outrageous conduct by an insurance company. In both *Hernandez* and *Wallis*, for example, there was more than just economic vulnerability supporting the claim of outrageousness. But neither side has cited any authority

holding economic vulnerability can never establish outrageous conduct, or at least serve as a factor in the calculus, particularly in the context of the third argument discussed below.

Mr. Barnett's third argument – *i.e.*, that Allstate acted outrageously given its special relationship with Mr. Barnett – is enough to support his claim for intentional infliction of emotional distress. Here, *Bogard v. Employers Casualty Co.*, 164 Cal. App. 3d 602 (1985), is instructive. In *Bogard*, the insurer advised its insureds that they were not represented by counsel hired by the insurer in the settlement aspect of the case and that they should retain their own counsel at their own cost. The court stated that this

> was an abuse of a relation which gave [the insurer] power to damage [its insureds'] interest. Such conduct, by virtue of the position of power [the insurer] enjoyed by controlling the litigation in the underlying action, and in light of [the insurer's] duty to defend, was outrageous.
>
> By informing [the insureds] that counsel hired by [the insurer] to defend [the insureds'] interests did not represent [them] in a significant aspect of the case, [the insurer] undermined the very security that the insureds paid for when they took out an insurance policy calling for the insurer to defend them in a lawsuit relating to the subject matter of the policy. While the insurer "is privileged, in pursuing its own economic interests, to assert in a permissible way its legal rights and to communicate its position in good faith to its insured even though it is substantially certain that in so doing emotional distress will be caused," such a privilege does not insulate conduct which negates the insurer's duty to defend.

*Id.* at 616-17. If Allstate – as Mr. Barnett contends – delayed in defending the Alexander suit, delayed in settling the suit, and failed to pay *Cumis* counsel fees without good reason by putting its interests ahead of Mr. Barnett's interests, then Allstate severely compromised its duty to defend without good faith. Again, although Allstate disputes these allegations, Mr. Barnett has adequately stated a claim for intentional infliction of emotional distress.

E.   Negligent Misrepresentation

"The elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." *Glenn K.*

11

1  *Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 n.2 (9th Cir. 2001).  In its motion to dismiss, Allstate
2  argues that Mr. Barnett has failed to allege both reliance and damages.
3        In evaluating this argument, the Court takes note that, in his counterclaims, Mr. Barnett
4  alleges that the misrepresentation occurred was when Allstate stated that it would provide a defense
5  under reservation of rights.  *See* Countercl. ¶ 51.  However, in his opposition, Mr. Barnett has
6  changed his tune and argues that the misrepresentation took place when Allstate advertised on its
7  website that, in essence, it would provide insurance coverage for accidents.  *See* Opp'n at 11.
8        Even if the Court were to take into account the new misrepresentation argument made in the
9  opposition brief, Mr. Barnett's revised theory fails to state a claim for relief.  First, Allstate's
10 statements in its website are not really statements of a past or existing fact.  Second, Mr. Barnett has
11 made no assertion in his opposition that Allstate made the statement that it would provide insurance
12 coverage for accidents without reasonable ground for believing it to be true.  The counterclaim
13 contains no specific facts making this claim plausible as required under *Twombly* and *Iqbal*.  Finally,
14 to the extent Mr. Barnett argues that Allstate made a misrepresentation because it never intended to
15 provide coverage for the negligence of its insureds, *see* Opp'n at 11, Allstate correctly points out
16 that there is a difference between negligence and an accident.  *See American Int'l Bank v. Fidelity &*
17 *Deposit Co.*, 49 Cal. App. 4th 1558, 1573 (1996) (stating that "'[n]egligent' and 'accidental' are not
18 synonymous").  Allstate never made a representation that it would provide coverage for negligence;
19 rather, it only indicated that it would cover accidents (*i.e.*, "'accidentally causing injury'").
20 Countercl. at 2 (quoting Allstate's website).  In view of the undisputed language of the policy, Mr.
21 Barnett's theory does not state a plausible claim of misrepresentation.
22       The Court therefore dismisses the claim for negligent misrepresentation.
23 F.    <u>Violation of § 17200 (Fraudulent Sales Practice)</u>
24       Finally, Mr. Barnett has asserted a § 17200 counterclaim predicated on Allstate's allegedly
25 false statements in its website that it would, in essence, provide insurance coverage for accidents.  In
26 its papers, Allstate contends that the claim should be dismissed because Mr. Barnett has no basis for
27 seeking injunctive relief since he has an adequate remedy at law.  *See Prudential Home Mortg. Co.*
28 *v. Superior Court*, 66 Cal. App. 4th 1236, 1249 (1998) (holding that statutory relief under the UCL

"is subject to fundamental equitable principles, including inadequacy of the legal remedy"). In his opposition, Mr. Barnett fails to address this argument. Moreover, to the extent Mr. Barnett is seeking an injunction stopping Allstate "from contending that it's [sic] homeowners insurance policies do not provide coverage related to the negligence of it's [sic] insured's," Opp'n at 13, then – as Allstate argues – he has an adequate remedy at law, *i.e.*, he can sue for breach of contract and recover damages.

Mr. Barnett points out that he has also brought the § 17200 claim because he wants restitution – namely, return of the premiums he paid. The problem here is that Mr. Barnett's counterclaims as pled do not specifically identify this relief. While this problem could be overcome with an amendment, there are additional problems with the § 17200 claim that mandate dismissal. For example, similar to the claim for negligent misrepresentation, Mr. Barnett has not clearly alleged that Allstate made the statement that it would provide insurance coverage for accidents with knowledge of the falsity of the statement. *Cf. Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (stating that one of the elements of the tort action of fraud is knowledge of falsity). To the extent Mr. Barnett argues that Allstate made a misrepresentation because it never intended to provide coverage for the negligence of its insureds, there is, as noted above, a difference between negligence and an accident, and his allegations are too conclusory to satisfy *Twombly* and *Iqbal*.

Accordingly, the Court dismisses the § 17200 claim.

## II. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Allstate's motion to dismiss. The § 1983, declaratory relief, and Fair Claims Practice causes of action are dismissed with prejudice. The negligent misrepresentation and § 17200 causes of action are dismissed with leave to amend. Mr. Barnett may proceed with his claims for breach of contract, bad faith, and intentional infliction of emotional distress, consistent with this order.

///
///
///
///

To the extent Mr. Barnett files an amended complaint to reassert claims for negligent misrepresentation and violation of § 17200 (based on fraud), he is forewarned that, in accordance with Federal Rule of Civil Procedure 11, he must have a good faith basis for any specific allegations. Any amended complaint must be filed within 20 days of the date of this order.

This order disposes of Docket No. 74.

IT IS SO ORDERED.

Dated: June 15, 2011

_____
EDWARD M. CHEN
United States District Judge

14