UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RICHARD BARNETT, *et al.*,<br><br>　　　　Defendants.<br>_____/ | No. C-10-0077 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**(Docket No. 183)** |

Previously, the parties stipulated to, and the Court approved, entry of a partial judgment in favor of Allstate. Based on that stipulation and order, Allstate now moves for judgment on the pleadings. More specifically, Allstate argues that (1) it is entitled to a judgment on Mr. Barnett's counterclaims (breach of contract, bad faith, and intentional infliction of emotional distress) and (2) it is entitled to recover the fees and costs it incurred in defending Mr. Barnett in the Alexander lawsuit. *See* Docket No. 66 (FAC ¶ 9 *et seq.*) (first cause of action, asking for reimbursement of defense costs).

## I. FACTUAL & PROCEDURAL BACKGROUND

In his amended counterclaims, Mr. Barnett asserted a variety of claims against Allstate. *See* Docket No. 71 (amended counterclaims). Allstate moved to dismiss, and the Court granted in part and denied in part Allstate's motion. The Court's order left the following counterclaims for trial: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) intentional infliction of emotional distress. *See* Docket No. 95 (Order at 13).

1  Thereafter, the parties proceeded to prepare for the first phase trial – *i.e.*, coverage – and the
2  Court held a final pretrial conference on November 8, 2011. *See* Docket No. 161 (civil minutes).
3  Several weeks later, the parties submitted a stipulation and proposed order to the Court which
4  rendered the first phase of trial nugatory. More specifically, the parties agreed that "partial
5  judgment should be entered against Mr. Barnett as to the first phase of trial only, declaring that
6  Allstate's Deluxe Homeowners Policy number 0 27 541527 did not cover the costs of defending or
7  indemnifying him in the Underlying Action." Docket No. 177 (Stip. at 2). The Court signed off on
8  the parties' proposed order which states as follows:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT plaintiff Allstate Insurance Company had no obligation under its Deluxe Homeowners Policy number 0 27 541527 to defend or indemnify Richard Barnett in the action styled *Alexander v. Barnett*, Humboldt County (California) Superior Court, Case No. DR090825. All other issues, including but not limited to the parties' entitlement to legal fees and costs, shall be determined by further proceedings herein.

Docket No. 178 (Stip. & Order at 3).

Based on the partial judgment, Allstate now moves for judgment on the pleadings on Mr. Barnett's counterclaims. Allstate further asks that Mr. Barnett be ordered to reimburse Allstate for the defense costs (including attorney's fees) incurred in the Alexander lawsuit. Allstate has not moved for judgment for its claim that it is entitled to reimbursement of the $70,000 it paid to Mr. Alexander to settle the Alexander lawsuit. *Cf.* Docket No. 66 (FAC ¶ 16 *et seq.*) (second cause of action, asking for reimbursement of indemnity (settlement) payments).

## II.   DISCUSSION

### A.   Legal Standard

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "'functionally identical'" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard applies. *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). That is, a court considers "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Id.* at 1054; *see also Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (stating that, "[t]o survive a Rule

1  12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim
2  to relief that is plausible on its face" (internal quotation marks omitted).

3  B.     Mr. Barnett's Counterclaims

4      As noted above, after the Court's order granting in part and denying in part Allstate's motion
5  to dismiss, the following counterclaims remained for adjudication: (1) breach of contract, (2) breach
6  of the implied covenant of good faith and fair dealing, and (3) intentional infliction of emotional
7  distress ("IIED"). Allstate has now moved for judgment on each of these counterclaims because of
8  the stipulated partial judgment stating it had no obligation under the homeowners policy to defend or
9  indemnify Mr. Barnett.

10      In his papers and at the hearing, Mr. Barnett did not dispute that the claim for breach of
11  contract should be dismissed. He argued only that the bad faith and IIED claims should survive
12  Allstate's motion. More specifically, Mr. Barnett argued that, once Allstate agreed to defend him --
13  even under a reservation of rights -- it had a duty to settle the underlying action brought by Mr.
14  Alexander *without* taking into consideration whether or not his insurance claim was covered by the
15  homeowners policy. He contends that such duty obtains even if it is ultimately determined that there
16  was no coverage in the first place. Mr. Barnett contends that Allstate breached this duty by delay in
17  settling the underlying case, which resulted in increased expenditures and a higher settlement
18  amount.

19      In support of his legal argument, Mr. Barnett cites *Johansen v. California State Automobile*
20  *Association Inter-Insurance Bureau*, 15 Cal. 3d 9 (1975). *Johansen*, however, actually supports
21  Allstate's position. More specifically, in *Johansen*, the California Supreme Court indicated there is
22  no duty to settle absent the existence of coverage in the first place. For example, in distinguishing a
23  state appellate court decision cited by the defendant, the Court noted that, in that case, "the insurer . .
24  . was not under a duty to settle since its policy did not actually provide for coverage." *Id.* at 18. The
25  Court also underscored that an insurer is not

26          require[d] . . . to settle in all cases irrespective of whether the policy
            provides coverage. Clearly, if defendant's belief that the policy did
27          not provide coverage in the instant case had been vindicated, it would
            not be liable for damages flowing from its refusal to settle; all that
28

*Comunale*[1] establishes is that an insurer who fails to settle does so "at its own risk."

*Id.* at 19. The Court likewise noted: "California authorities establish that an insurer who fails to accept a reasonable settlement offer within policy limits because it believes the policy does not provide coverage *assumes the risk* that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits." *Id.* at 12 (emphasis added).

While *Johansen* establishes that an insurer who fails to settle based on coverage questions "assumes the risk" of exposure to a claim for breach of the duty of good faith and fair dealing in the event coverage is established, *Johansen* does not hold that any such liability obtains even if no such coverage is proven. Indeed, as indicated above, in discussing *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.*, 9 Cal. App. 3d 508 (1970), the *Johansen* court expressly observed that "the insurer State Farm was not under a duty to settle since its policy did not actually provide for coverage." *Johansen*, 15 Cal. 3d at 18.

In addition, Mr. Barnett's contention that a bad faith claim can exist in the absence of coverage is inconsistent with the California Supreme Court's decision in *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1 (1995). There, the court held that, "if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Id.* at 36 (emphasis omitted). Mr. Barnett does not claim there was a potential for coverage as he has stipulated to the contrary.

Moreover, as Allstate argued at the hearing, policy considerations weigh against Mr. Barnett's position. If the Court were to adopt Mr. Barnett's position, an insurer would have a strong incentive to deny an insured's claim outright rather than taking the middle ground of agreeing to defend under a reservation of rights. As Mr. Barnett conceded at the hearing, if Allstate had simply denied coverage outright, it would have had no duty to settle and hence no liability for bad faith in refusing to settle timely. Under Mr. Barnett's construct, the insurer is in a worse position by taking

---

[1] *See Comunale v. Traders & General Insurance Co.*, 50 Cal.2d 654 (1958).

the cautious route of defending under a reservation of right. Mr. Barnett's counter-argument -- that it would create bad policy to allow an insured to ignore its duty to settle where there has been a post-facto determination of no coverage -- is meritless. As *Johansen* points out, an insurer *risks* exposure to substantial damages should its coverage position be proved wrong. Hence, the law does provide a substantial incentive to comply with *Johansen*.

Accordingly, the Court grants Allstate's motion for judgment on the pleadings and dismisses not only Mr. Barnett's claim for breach of contract but also his claims for bad faith and IIED.

C.  Allstate's Claim for Reimbursement of Defense Costs

As noted above, Allstate has moved for a judgment not only on all of Mr. Barnett's counterclaims but also on one of its affirmative claims against Mr. Barnett -- namely, the claim for reimbursement of defense costs.

As a preliminary matter, the Court notes that Allstate is only, as this point in the proceedings, asking for reimbursement of defense costs. It is not asking to be reimbursed for the $70,000 it paid to Mr. Alexander to settle the underlying lawsuit. Therefore, any argument by Mr. Barnett in his opposition related to *Blue Ridge Insurance Co. v. Jacobsen*, 25 Cal. 4th 489 (2001), is irrelevant. *See id.* at 492 (addressing the question of "'[w]hether an insurer defending a personal injury suit under a reservation of rights may recover settlement payments made over the objection of the insured when it is later determined that the underlying claims are not covered under the policy'").

As to whether Allstate is entitled to reimbursement of its defense costs only, Allstate correctly points out that *Buss v. Superior Court*, 16 Cal. 4th 35 (1997), supports its position. In *Buss*, the California Supreme Court expressly held that an "insurer may indeed seek reimbursement for defense costs" with respect to claims for which there is not even potential coverage under the insurance policy at issue. *Id.* at 50; *see also id.* at 51 (noting that "'California law clearly allows insurers to be reimbursed for attorney's fees' and other expenses 'paid in defending insureds against claims for which there was no obligation to defend'").

In his opposition, Mr. Barnett argues that Allstate should not be entitled to *all* of its defense costs because it took action that made defense costs higher than necessary. Mr. Barnett points to two specific acts by Allstate: (1) its failure to participate in settlement discussions with Mr.

Alexander earlier, *see* Opp'n at 5 (arguing that "Allstate failed to mitigate [its] damages by [its] refusal to settle the underlying action until after the ruling on [its] motion for summary judgment"), and (2) its attempt to deprive Mr. Barnett of his costs in the Alexander case. *See* Opp'n at 5-6 (taking note of declaration filed by Allstate employee that Mr. Barnett did not pay for certain costs[2]).

With respect to the first point above, the problem for Mr. Barnett is that, if Allstate never had a duty to defend, then it did not have to participate in settlement discussions at all. As for the second point, it was never raised as an affirmative defense in Mr. Barnett's answer and, therefore, has been waived. *See generally* Docket No. 71 (Ans. ¶¶ 18-24) (affirmative defenses).

Accordingly, the Court grants Allstate's motion for judgment on the pleadings on its affirmative claim for reimbursement of defense costs.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Allstate's motion for judgment on the pleadings in its entirety. Mr. Barnett's counterclaims for breach of contract, bad faith, and IIED are dismissed with prejudice. In addition, Allstate is entitled to a judgment in its favor on its affirmative claim for reimbursement of defense costs.

This order disposes of Docket No. 183.s

IT IS SO ORDERED.

Dated: March 5, 2012

EDWARD M. CHEN
United States District Judge

---

[2] Ultimately, the superior court found the Allstate declaration irrelevant because of the collateral source rule. *See Mize-Kurzman v. Marin Community College Dist.*, 202 Cal. App. 4th 832, 872 (2012) (noting that, under this rule, "if an injured party receives some compensation for his [or her] injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor"; adding that "[t]he rule operates both as a substantive rule of damages and as a rule of evidence") (internal quotation marks omitted).